### MATHER v. STOKELY.

(Circuit Court of Appeals, First Circuit. January 6, 1915.)

No. 1068.

1. INTEREST (§ 28*)—RATE—LAW GOVERNING.

In an action for breach of the covenants in a deed to land in another state, the rate of interest recoverable is that fixed by the law of the forum.

[Ed. Note.—For other cases, see Interest, Cent. Dig. §§ 56–59; Dec. Dig. § 28.*]

2. COVENANTS. (§ 131*)—BREACH OF COVENANT—MEASURE OF DAMAGES.

In Massachusetts, the measure of damages for a breach of covenants of seisin is the consideration paid, with interest from the date of payment, though plaintiff has had undisturbed possession, and has not been called upon to account for mesne profits, and may never be so called upon.

[Ed. Note.—For other cases, see Covenants, Cent. Dig. § 254; Dec. Dig. § 131.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. TAXATION (§ 755*)—TAX DEEDS—AUTHORITY TO MAKE.

A Florida tax deed, made in 1869, was void, where it was executed by the deputy tax collector in his own name, instead of by the collector in his own name.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 1506; Dec. Dig. § 755.*]

4. EVIDENCE (§ 35*)—JUDICIAL NOTICE—LAWS OF OTHER STATES—FEDERAL COURTS.

The rule applied that in the federal courts the trial court is assumed to know the law of states other than that in which the trial is had, and evidence of such law is immaterial.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 35, 51; Dec. Dig. § 35.*

Judicial notice of public laws and regulations, see note to Smith v. City of Shakopee, 44 C. C. A. 4.]

In Error to the District Court of the United States for the District of Massachusetts; Clarence Hale, Judge.

Action by Hattie N. Stokely against John L. Mather. Judgment for plaintiff, and defendant brings error. Modified.

Hollis R. Bailey, of Boston, Mass. (John C. Hammond, of Northampton, Mass., on the brief), for plaintiff in error.

Theobald M. Connor, of Northampton, Mass., and David H. Keedy, of Amherst, Mass., for defendant in error.

Before PUTNAM, DODGE, and BINGHAM, Circuit Judges.

PUTNAM, Circuit Judge. This is a suit at common law brought on the covenants in a warranty deed of lands in Florida. It was tried in the District Court for the District of Massachusetts. The plaintiff, Stokely, declared against the defendant, Mather, on a portion of the covenants in a warranty deed given by the defendant to the plaintiff, which was dated the 1st day of December, 1904. The covenants negatived in the declaration were the following: That the defendant was "lawfully seised in fee simple of a good, absolute, and indefeasible estate of inheritance of and in all and singular the premises described in said deed," and that he did not "have good right, full power, and lawful authority to convey the same in manner and form described in said deed." The declaration also alleged as follows:

"And the defendant was not seised in fee simple of the land described in the said deed, but the same was held adversely by one William McCabe."

The allegations of the declaration correspond with the covenants quoted. Also it is true that William McCabe had an apparently adverse title of record as alleged in the declaration; but neither he nor any one else ever disturbed the possession of the plaintiff with any adverse claim, and, so far as the record shows, the plaintiff had undisturbed possession of the premises from the time the deed was given to the present time, and she has received the rents and profits, so far as there were any.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The plaintiff paid for her deed $3,555.82. The verdict was for the plaintiff in the following terms:

"The jury find for the plaintiff, and assess damages in the sum of thirty-five hundred and fifty-five dollars and eighty-two cents ($3,555.82), and interest thereon at the rate of eight per centum per annum."

Objection was made to the verdict, because it fixed no date from which the interest should run, and also because it fixed the rate of interest at 8 per cent. per annum, while the statutory rate in the district of Massachusetts, where the case was tried, is only 6 per cent. per annum. Subject to objection and exception, however, the court directed interest to be added to the verdict at the rate of 8 per cent. per annum from February 26, 1905, to the date of the verdict. February 26, 1905, was the date that payment was made for the deed; and the court held that, as it had instructed the jury to add to its verdict interest at the rate and for the time named, it was to be assumed that the verdict carried interest accordingly. Judgment was entered on that basis for the amount paid for the deed, plus $2,006.27, interest thus estimated, according to the directions of the court.

The exceptions were quite numerous, and the errors alleged in the assignment were also numerous. As in many cases where the alleged errors assigned are numerous, many of them were passed over very lightly by the counsel. Therefore, to get at the real issue between the parties, we make the following extracts from the supplemental brief of the defendant in error:

"The plaintiff below put in evidence said deed and proved the consideration therefor, thus making a prima facie case; but the plaintiff below did not rest there. In anticipation of a defense of a paper title derived from Sarah A. Mather, she called the defendant and put in through him a certified copy of a quitclaim deed from said Sarah to him in 1885. She also introduced a certified copy of a deed from one Stanbury to said Sarah in 1869. She then pointed out to the court that the deed of Stanbury to said Sarah was invalid. She showed, further, that neither Sarah Mather nor the defendant below had ever been in the actual occupation or possession of the land. This was going beyond the requirements of a prima facie case for the breach of a covenant of seisin 'of a good, absolute, and indefeasible estate of inheritance.'

"The defendant below offered no evidence that he was in actual possession of the land when the deed in suit was delivered to the plaintiff below. He offered no other evidence of a paper title. He did not contest the invalidity of the Stanbury deed. He offered no evidence of the acquisition of title by himself by adverse possession.

"The defendant below tried his case on the theory that he had constructive seisin of the land, because he had title to the land by virtue of the quitclaim deed from Sarah Mather to him in 1885, because Sarah A. Mather, although having no valid paper title, yet had acquired title by adverse occupation. And so the case turned on the issue whether Sarah Mather had acquired title by adverse occupation. All the evidence of the defendant below came from the defendant himself. All his evidence was submitted to the jury. It was controverted by the plaintiff below, and it failed to satisfy the jury."

On the other hand, the defendant, now the plaintiff in error, furnished us at the argument of the case the following summary:

"The chief points relied on by the defendant, John L. Mather, may be summarized as follows:

"1. The tax deed to Miss Mather in 1869 was valid and gave her a good title.

"2. Said deed, in any event, was incontestable after one year from February, 1872, when the one-year statute of limitations was enacted.

"3. The deputy tax collector was a proper person to give the deed.

"4. The tax deed was prima facie evidence of the regularity of the proceedings, and there was no competent evidence of any failure to give proper notice.

"5. The plaintiff, Hattie N. Stokely, having offered the tax deed, was bound by the recitals contained therein.

"6. If the tax title and the one-year statute of limitations did not give the defendant a valid title, then he obtained a good title by adverse possession for seven years, dating from 1869.

"7. The verdict is too vague to support the judgment.

"8. The jury could not allow interest at 8 per cent., the legal rate being only 6 per cent."

Whatever other objections were made, or errors assigned, have not been urged on us. We confine ourselves, therefore, to the points in defense expressly covered by the summary.

[1] We first take up the matter of allowances of interest. One question is whether interest can be computed at the local rate of interest in Florida, being 8 per cent. per annum, for unliquidated damages, which, in the eyes of the law, is allowed only as damages for retention of money without any agreement for the payment thereof. According to the rules of law in the federal courts, the rate of interest under these circumstances is fixed by the law of the forum, which is, in this case, only 6 per cent. per annum. Goddard v. Foster, 17 Wall. 123, 143, 21 L. Ed. 589. The plaintiff, now the defendant in error, relies on several decisions of the Supreme Court which she cites to us. While these decisions recognize special circumstances, for example, cases of obligations which stipulate for a special rate of interest, and cases of coupons which are expressly made payable at a specific place, yet, as a whole, they recognize the rule here stated.

[2] The next question is as to the dates from which interest should be paid. The court fixed this date as the date of the payment for the deed from the defendant to the plaintiff. Nobody disturbed the plaintiff's title, or threatened to disturb it, and non constat that it ever will be disturbed. Therefore the only equity was the well-known equity of interest running from the date of the plaintiff's writ, when there is no other demand made. In this case there was no other demand made. It is said in Rawle on Covenants for Title (5th Ed. 1887) 281, that, while ordinarily, under these circumstances, interest runs from the date of payment for the deed, this is to compensate the plaintiff for his liability for mesne profits. In this case the record shows that there was such a complete absence of mesne profits that no valuable possession could be held which would afford the basis therefor, and, as we have already said, the plaintiff had an undisturbed possession. The rule, however, has been established as applied by the District Court.

The foundation of the rule within the United States that on a breach of warranty of seisin damages are assessed at the amount of the consideration paid, with interest, seems to have got its final shape in the opinion of Chief Justice Kent in Pitcher v. Livingston, 4 Johns. (N. Y.) 1, 4 Am. Dec. 229, decided in 1809. He traced the foundation of the rule back to the Year Books; and in the consideration of it in the fourth volume of his Commentaries, commencing at page *475,

he connects it again with the rule of the common law that, on a breach of warranty, the warrantor was to replace the land as to which the covenant of seisin failed, by other land of equal value as of the time the covenant was made. There is a lack of accuracy about this, because at present the exact time by the rule is when payment was made for the land. He states the more modern rule in his Commentaries as follows:

"When personal covenants were introduced as a substitute for the remedy on the voucher and warranty, the established measure of compensation was not varied or affected. The buyer, on the covenant of seisin, recovers back the consideration money and interest, and no more."

The rule of Pitcher v. Livingston is a very simple one, namely, the purchaser recovered interest on the consideration money in lieu of anything in the way of improvements which he had lost, or in the way of increase of the value of the land. The same rule was recognized in Massachusetts as early as 1807, in Marston v. Hobbs, 2 Mass. 433, 3 Am. Dec. 61, and it has ever since been the prevailing rule in that state. In 1811, in Nichols v. Walter, 8 Mass. 243, 246, speaking of it, it was said by the court that "the rule is settled and cannot be shaken." The damages assessed, it was said, consist of the consideration money and "interest from the time of its payment."

In the present case, the plaintiff was in possession of the land, so far as there was any apparent possession practicable, and was taking the mesne profits, so far as there were any, up to the time of the verdict, and, so far as the record shows, is still in possession of both the land and the mesne profits. Nevertheless, in the general rules stated by Chancellor Kent in Pitcher v. Livingston, and also in the rule at common law as explained in 10 Bacon's Abridgment, 407, no account is taken of the intervening improvements, or of the increase or diminution in the value of the land; but reparation is made strictly in accordance with the value at the time when the covenant was made or broken, which times are identical. The foundation of the rule, moreover, was arbitrary, it appearing to be the position that its general enforcement was the way in which justice could probably be better accomplished in the mass. At any rate, on a question of this nature we seem to be bound by the law as held in Massachusetts; and the direction of the learned judge of the District Court to compute interest from the time the consideration was paid, subject, of course, to the rate in Massachusetts already spoken of, must be held to have been correct, and this notwithstanding the defendant has never been called on to give an accounting of whether or not there were any mesne profits, and never may be so called on.

We will add that the extent to which the rule has been recognized and applied will be appreciated by examining the very numerous decisions cited in Sutherland on Damages (3d Ed. 1903) vol. 2, notes to page 1706, as supplemented by the same work, vol. 1, pages 302 to 304, with reference to the fact that the recovery of the corpus of either land or personal property, or of the value thereof, carries with it as damages, ordinarily, the equivalent of interest for the intervening period. At any rate, so far as Massachusetts is concerned, the rule has

been so uniformly practiced for more than a century, and so steadily held, that it must be taken to be a fixed rule of law, to which the individual judgments of the court and profession must yield.

[3] One proposition of the plaintiff was to the effect that the title of the defendant rested on a tax deed given by one Stanbury in his own name as deputy tax collector, when, as the law stood at the time the deed was executed, it should have been made by the collector himself in his name. The authorities cited by the plaintiff demonstrate that this proposition is correct; and this meets paragraphs 1 and 2 of the summary we have quoted.

All the propositions submitted to us with reference to the matter of limitations, lapse of time, and adverse possession, and all other matters of that character, were correctly submitted to the jury by the presiding judge; and we find no support for anything else covered by the summary we have quoted.

[4] Incidentally we refer to an exception taken because a witness was allowed to testify as an expert what was the statutory or common law of Florida. We observe merely that testimony of this kind in the federal courts is purely immaterial, as much so as though the testimony was as to the law of the state constituting the judicial district where the trial court was sitting. In each class of cases, the trial court is assumed to know the law.

Inasmuch as the errors in the allowance of interest can be corrected by the record, it is not necessary that the case go back for another trial. Judgment, therefore, will be:

The judgment of the District Court is modified, by amending it to carry interest only as stated in our opinion passed down on the 6th day of January, 1915, and, as so modified and amended, is affirmed, and the plaintiff in error recovers his costs of appeal.