PRUDENTIAL INS. CO. OF AMERICA v. CARLSON.

No. 2387.

Circuit Court of Appeals, Tenth Circuit.

March 2, 1942.

Rehearing Denied April 14, 1942.

Ralph M. Jones, of Kansas City, Mo. (David F. Carson, of Kansas City, Kan., William C. Michaels, of Kansas City, Mo., J. L. Miller, of St. Louis, Mo., and Michaels, Blackmar, Newkirk, Eager & Swanson, of Kansas City, Mo., on the brief), for appellant.

J. O. Emerson, of Kansas City, Kan. (William E. Carson, of Kansas City, Kan., on the brief), for appellee.

Before PHILLIPS, HUXMAN, and MURRAH, Circuit Judges.

HUXMAN, Circuit Judge.

Hedwig Carlson, as beneficiary, sued the Prudential Insurance Company of America, a corporation, seeking recovery on an accident policy issued to her husband, Emil Carlson. The complaint in substance alleged that the insured's automobile collided with the guard rail of a viaduct or bridge in Kansas City, Kansas, and as a result thereof the insured, Emil Carlson, received serious bodily injuries in and about his chest and heart and suffered complete prostration and coronary occlusion, and died within ninety days of the time of such bodily injuries as a result thereof, directly and independently of all other causes. Plaintiff prayed judgment for $3,000, the amount of the policy, and a reasonable sum as attorneys' fees. The cause was removed from the state court where it was originally filed, to the District Court of the United States for the District of Kansas, where issues were joined and trial was had to the court without a jury. Judgment was entered for appellee for $3,000 and $800 attorneys' fees. Appellant has appealed.

The company is a New Jersey company. The policy provides that premiums shall be paid at the home office of the company; that payments under the policy shall be made at the home office; that notice of claims shall be given to the company at its home office, Newark, New Jersey. Appellee's position that there was no showing in the trial below that the contract was a New Jersey contract is not well taken. The policy itself was attached as an exhibit to the petition and was a part of the pleadings. In its answer to the amended complaint, appellant alleged that the policy was not to take effect until approved by the company at its home office, and that it was approved at its home office in Newark, New Jersey. Furthermore, in its requested findings of fact, appellant asked the court to find that the contract was a New Jersey contract. The contract sued upon was a New Jersey contract, and is therefore governed by the laws of New Jersey.

The policy provided payment for losses specified therein resulting directly and independently of all other causes, of bodily injuries effected solely through external, violent and accidental means. It excluded from the coverage of the policy loss from accident, injury, death, or other loss caused wholly or partly by disease or bodily or mental infirmity.

The evidence upon which appellee relied to establish her right of recovery is as follows: The accident which caused the death of the insured occurred January 17, 1939. On that date insured was traveling in his automobile over the Tenth Street viaduct in Kansas City, Kansas. The car went over a 12-inch wooden curbing and ran into an iron railing adjacent to the curbing, with such force as to bend the railing and hurl the insured against the steering wheel with such force that it bruised him and caused the injuries from which he died. Prior to the accident, deceased had been a well man; he was robust for his age, and had worked at manual labor without complaint. On the evening of the accident, he arrived home about 7:30. He looked pale and weak, did not answer questions, did not eat, and soon went and lay down on the davenport. He did not sleep that evening, but groaned and turned and twisted all night. There was a red spot or discoloration across deceased's breastbone. After the accident, deceased's behavior was entirely different than before; those who worked with him said he appeared to be "all in". He was seen to sit down as if exhausted, and remain seated for twenty minutes. After the accident he was at his job with the Pullman Company, working on a window-shade of a tourist car, when he turned pale and sat down. He moved very slowly. Prior to his accident he had been a fast worker. Shortly after the accident he was seen to grab his hand over his heart while working. His fellow workers noticed that he dragged at his work with a frown on his face, his hands shook, he appeared

to be a sick man. The next day after the accident he went out to sweep a light snow from the sidewalk and came right back in, "white as a sheet", and sat down holding his hand over his heart. On various occasions from then on, upon the lightest exertion, such as attempting to open a door or reaching to put a light bulb in a socket, he would be seized with pains in the heart, until the final seizure on February 6. He died within a few days thereafter. For two or three years prior to his death he had never consulted a doctor.

A post mortem examination was made of the body. It revealed that deceased died of acute thrombosis which had been present probably from a few minutes to three weeks, and in no event longer than six weeks. It also revealed that the deceased had arteriosclerosis which had existed for many years. It may be said that the medical testimony of both parties fairly established that had it not been for the arteriosclerosis, the blow which deceased suffered would not have caused the thrombus which resulted in his death. Appellant therefore contends that the undisputed evidence established that decedent's death was not caused by bodily injuries resulting solely from accidental means, but was indirectly caused by bodily disease and was therefore outside the coverage of the policy.

What constitutes death resulting directly or indirectly by disease or bodily infirmity, as that term is used and understood in accident policies of insurance, is not easy of answer.

■■ "It is elementary that because the policy of insurance is couched in the language of the draftor of the policy, the meaning and scope, is construed strictly against the draftor and in the event of an ambiguity appearing upon its face, the ambiguity will be construed in favor of the insured." Mandles v. Guardian Life Ins. Co. of America, 10 Cir., 115 F.2d 994, 996. What we seek is the intention of the parties as established by the written contract, construed in the light of the objects and purposes sought to be accomplished by them. The New Jersey courts are committed to this doctrine of construction. In Cramer v. John Hancock Mut. Life Ins. Co., 13 A.2d 651, 657, 18 N.J.Misc. 367, the court said: "To construe these accident policies too strictly would likely thwart the general object of the insurance and ultimately subserve neither the purposes of the insurers, nor the insured."

In Silverstein v. Metropolitan Life Ins. Co., 254 N.Y. 81, 171 N.E. 914, 915, Chief Judge Cardozo said: "A policy of insurance is not accepted with the thought that its coverage is to be restricted to an Apollo or a Hercules."

In Freeman v. Mercantile Mut. Acc. Ass'n, 156 Mass. 351, 30 N.E. 1013, 1014, 17 L.R.A. 753, it was said that: "An injury which might naturally produce death in a person of a certain temperament or state of health is the cause of his death, if he dies by reason of it, even if he would not have died if his temperament or previous health had been different; * * *."

This principle is reaffirmed by the Massachusetts court, in Leland v. Order of United Commercial Travelers, 233 Mass. 558, 124 N.E. 517, 520, where the court said: "If there is no active disease, but merely a frail general condition, so that powers of resistance are easily overcome, or merely a tendency to disease which is started up and made operative, whereby death results, then there may be recovery even though the accident would not have caused that effect upon a healthy person in a normal state."

The New Jersey court quotes with approval from the cases enunciating these principles. In Cramer v. John Hancock Mutual Life Ins. Co., supra, the New Jersey court quotes with approval the following statement from Kelly v. Prudential Ins. Co. of America, 334 Pa. 143, 6 A.2d 55, 58, "The law is that if a disease, while existing, be but a condition and the accident the moving, sole and proximate cause of the death, the exception in the policy will not relieve the insurer for death so caused. The fact that the physical infirmity of the victim may be a necessary condition to the result does not deprive the injury of its distinction as the sole producing cause."

■ It quotes with further approval the following language from the Kelly case: "It is clear that if the physical condition of the insured is merely weakened or his resistance to disease lowered by a preexisting ailment or disease incident to advancing age, which creates a bodily condition of a passive nature not alone sufficient to cause death, this fact will not prevent recovery for death resulting from accidental means under an insurance policy providing indemnity therefor, even though death resulting indirectly from bodily or mental infirmity or disease is excluded as

a risk, provided the accident sets in progress the chain of events leading directly to death."

Appellant relies upon the cases of Runyon v. Monarch Accident Ins. Co., 108 N.J.L. 489, 158 A. 530, and Runyon v. Commonwealth Cas. Co., 109 N.J.L. 238, 160 A. 402, two New Jersey cases. Examination of those cases reveals that they are not in point or decisive because the disease with which deceased was afflicted at the time of the accident was found to be one of the causes of death. Our attention has also been called by appellant to the case of Bush v. Order of United Commercial Travelers of America, 124 F.2d 528, decided January 8, 1942, by the Second Circuit. This case likewise is distinguishable. The evidence there revealed that death was due to an embolism of the right auricle; that the origin of the clot was due to chronic cystitis which had continued for a long time, the result of which was that small pieces of the blood clot would break off and be picked up by the venous vessels, and that a fall or violence suffered might have the effect of dislodging the existing blood clot, thereby causing the embolism from which deceased died.

■ The medical experts for appellant and appellee are in accord that arteriosclerosis is a condition that comes on with advancing years; that it is quite generally present in persons after reaching middle age; and that notwithstanding its presence, people thus afflicted ordinarily live many years. It is a natural consequence of old age. Medical experts testified on behalf of appellee that a microscopic examination of the heart showed no evidence of previous heart failure of a congestive type; that everything pointed to an "acute affair"; that but for the trauma, deceased would have lived for years notwithstanding the presence of arteriosclerosis. Dr. John H. Luke, called as a witness for appellees, on cross examination was asked whether the final cause of death was not the coronary thrombosis and coronary sclerosis and whether all that the trauma did was only to aggravate the then existing condition. He replied, "No, sir. Just the opposite. The accident was the whole thing." This testimony amply sustains the finding of the trial court and the judgment based thereon that the death of the insured was the result, directly and independently of all other causes, of bodily injuries received by him in the accident.

■ True, appellant introduced the testimony of credible medical experts which, if adopted and relied on by the court, would lead to an opposite result. But on appeal we are not the triers of the facts. We may not substitute our judgment for that of the trial court. Our inquiry is limited to an examination of the findings and judgment to see if they are sustained by substantial testimony.

■ It is urged that in any event the judgment of the court awarding attorneys' fees is erroneous and must be set aside. The fact that statutes providing for the assessment of attorneys' fees designate them as costs does not make them such, as that term is generally used and understood. Statutes providing for attorneys' fees impose a liability which one may enforce as a matter of right. Such fees are put in controversy in the suit and are a part of the substantive right. Missouri State Ins. Co. v. Jones, 290 U.S. 199, 54 S.Ct. 133, 78 L.Ed. 267; People of Sioux County v. National Surety Co., 276 U.S. 238, 241, 48 S.Ct. 239, 72 L.Ed. 547. Since the substantive rights of the parties are governed by the lex loci, it follows that the law of New Jersey, and not the law of Kansas, governs the right to recover attorneys' fees. It seems to be admitted that attorneys' fees are not recoverable under the laws of New Jersey. The court therefore erred in entering judgment for the recovery of such fees.

■ It does not follow, however, that such error requires a reversal of the case. At no stage of the proceedings was the attention of the trial court called to the New Jersey law. Neither in the pleadings, at time of trial, nor in the proceedings subsequent to the trial and before notice of appeal, was the right to recover attorneys' fees challenged by appellant. And while federal courts take judicial notice of the laws not only of the forum but also those of other states, Mather v. Stokely, 1 Cir., 218 F. 764; Brown v. Ford Motor Co., 10 Cir., 48 F.2d 732; Parker v. Parker, 10 Cir., 82 F.2d 575; Kaye v. May, 3 Cir., 296 F. 450, that means no more than that one relying upon a statute of a foreign state need not plead it. It does not follow, however, that a court actually knows or considers the law of the foreign state, and one relying upon such a law is not relieved from calling it to the attention of the court at a proper time. If this is not done, failure of the court to apply the

foreign law may not be assigned as error for the first time on appeal. Great American Ins. Co. v. Glenwood Irr. Co., 8 Cir., 265 F. 594.

Affirmed.