Richard KUCEL, Plaintiff-Appellee
Cross-Appellant,

v.

WALTER E. HELLER & CO.,
Defendant-Appellant
Cross-Appellee.

Richard KUCEL, Plaintiff-Appellee,

v.

WALTER E. HELLER & CO.,
Defendant,

Appeal of Wendell S.
LOOMIS, Appellant.

Nos. 85–2822, 85–2831.

United States Court of Appeals,
Fifth Circuit.

March 30, 1987.

Michael M. Wilson, Wendall S. Loomis, Richard Frankel, Houston, Tex., for Walter E. Heller & Co.

Morton L. Susman, Robert D. Daniel, Houston, Tex., for Richard Kucel.

Wendall S. Loomis, Houston, Tex., pro se.

Before VAN GRAAFEILAND *, HIGGINBOTHAM, and JONES, Circuit Judges.

* Circuit Judge of the Second Circuit, sitting by designation.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Walter E. Heller & Co. appeals the district court's judgment awarding Richard J. Kucel $41,778.50 for Kucel's overpayment of a loan, and awarding interest and attorney's fees. Kucel cross-appeals the district court's failure to apply Uniform Commercial Code § 3–118(d) to determine the interest rate of the promissory note and to award an additional $287,070.40 in overpaid interest. Wendell S. Loomis, Heller's attorney, appeals the district court's imposition of sanctions against Loomis for his motion to reconsider the award of attorney's fees. We affirm the district court's determination that Heller must return Kucel's overpayments and that U.C.C. § 3–118(d) does not apply, but reverse on the actual amount of damages, award of attorney's fees, and the sanction.

I

A

Chandler Airlease Corporation sold a Lear jet to Lucey Products Company on February 28, 1978. Lucey executed a promissory note for $1,712,496.96, payable in 96 installments of $17,838.51 each. The note states that "interest, precomputed to the due dates, is included in the foregoing installments." The note does not state the principal amount borrowed, but the district court determined the principal to be $1,082,678.24 from documents executed with the promissory note. The note also does not state an annual percentage rate, but the rate is readily calculated to be 12.7198% based on the note's face value, principal, and payment period. The note was executed in Chicago, Illinois, and contains a provision designating the laws of the State of Illinois as the governing law. The first payment on the note was made at the time of execution.

Lucey sold the airplane to Richard J. Kucel, a Texas resident, who assumed the note. Later, Chandler was merged into Walter E. Heller & Co., a Delaware corporation with its principal place of business in Illinois. Thus Kucel and Heller stand in the same legal positions as the original borrower and lender, respectively.

After 62 payments were made on the note, Kucel encountered financial difficulties and ceased payments. Kucel found a purchaser for the airplane and asked Heller to release its lien on the airplane in exchange for prepayment of the note. Heller said that $615,717.12 was owing, an amount Kucel disputed. Determining that it had improperly included some taxes in the figure, Heller reduced the amount to $540,799.35. Kucel stated that he did not believe the revised figure was accurate and requested an accounting. Nevertheless, in order not to lose the purchaser, Kucel paid the amount in May 1983 before receiving the accounting. Heller released the lien, but did not release Kucel and Lucey from any obligation or liability occurring before the date of the release.

On May 18, 1983, two days after the sale, Kucel sent Heller a written demand for a loan payment history and calculation of the prepayment amount. On June 28, Kucel threatened suit, and on August 3, Kucel filed suit against Heller in federal district court, asserting diversity jurisdiction under 28 U.S.C. § 1332.

B

Kucel sought damages on several theories: money had and received, duress, coercion, fraud, conversion, and violations of the Texas Deceptive Trade Practices Act, Tex.Bus. & Comm.Code §§ 17.41–.63. Kucel also sought exemplary damages and attorney's fees. Heller denied Kucel's claims and argued that the prepayment constituted accord and satisfaction of all claims involving the note.

The district court, after a bench trial, awarded Kucel damages under his claim for money had and received, but denied Kucel's other claims. The court awarded $42,892.40 as the difference between what Kucel paid and what he owed, and reduced that award by $1,114.90 in late fees that Kucel owed Heller. The court also awarded prejudgment interest under Illinois law and postjudgment interest under federal law.

On January 15, 1985, about two weeks after trial, Kucel submitted an application for a hearing on and entry of award of attorney's fees under Tex.Rev.Civ.Stat. art. 2226 (current version at Tex.Civ.Prac. & Rem.Code § 38.001(8)). The court awarded Kucel the fees under art. 2226 on April 23, 1985, and held a hearing on the amount of fees on August 29, 1985. Three days after the hearing, Heller filed a motion for reconsideration on the grounds that Illinois law applied and that Illinois law did not allow attorney's fees in actions for money had and received. The district court denied Heller's motion and imposed a $500 sanction on Wendell Loomis, Heller's attorney.

Heller appeals the failure of the district court to find accord and satisfaction. Kucel cross-appeals the failure of the district court to apply the Illinois judgment rate of interest to the note in order to award him another $287,070.40. Heller also appeals the amount of damages and award of attorney's fees. Loomis appeals the sanction. We treat the claims in that order.

## II

Heller argues that Kucel's payment of $540,799.35 on May 16, 1983, constituted an accord and satisfaction of all claims and therefore prevents Kucel from recovering any overpayment.

■ An accord and satisfaction is "a contract under which an obligee promises to accept a stated performance in satisfaction of the obligor's existing duty." Restatement (Second) of Contracts § 281 (1981). Because accord and satisfaction is a contract, it requires a meeting of the minds, or an agreement. *See Flowers v. Diamond Shamrock Corp.*, 693 F.2d 1146, 1151–52 (5th Cir.1982) (applying Texas law); *Sears, Sucsy & Co. v. Insurance Co.*, 392 F.Supp. 398, 404 (N.D.Ill.1974) (applying Illinois law). Even when agreement exists, the accord is not binding if a party enters it under fraud, compulsion or mistake of fact. *See Groves v. Farmers State Bank*, 368 Ill. 35, 12 N.E.2d 618 (1937);

*Spring Branch Bank v. Mengden*, 628 S.W.2d 130, 134 (Tex.Civ.App.—Houston 1981, writ ref'd n.r.e.).

■ The district court held that Kucel and Heller never agreed, expressly or implicitly, that the payment constituted satisfaction of all claims. The evidence established that, although Heller released the lien on the airplane after Kucel paid the note, Heller specifically did not release Kucel or Lucey from any obligations or liabilities occurring before the release. Also, both Kucel and his attorney testified that they understood that a final accounting on the note and payment remained open when Heller released the lien. Their demand letter two days later confirms that belief. In light of this evidence, the district court did not clearly err in holding that the parties lacked the necessary accord to prevent this suit.[1]

## III

Kucel argues on cross-appeal that the district court erred in failing to set the interest rate of the note at the 9% judgment rate in Illinois. Under Kucel's theory, the district court should have determined that the note did not provide for interest, applied the Illinois judgment rate of interest to a principal of $1,082,678.24 to create a new amortization schedule for the loan, then awarded Kucel $287,070.40 as the difference in what Kucel would have paid with interest at 9% and what he paid with interest at 12.71%.

The Uniform Commercial Code § 3–118(d) provides:

Unless otherwise specified a provision for interest means interest at the judgment rate at the place of payment from the date of the instrument....

This provision is equally applicable in Texas, *see* Tex.Bus. & Comm.Code § 3.118(4), and in Illinois, *see* Ill.Rev.Stat. ch. 26, § 3–118. The purpose of U.C.C. § 3–118(d) is to avoid parol evidence about the amount

---

**1.** The evidence also supports the district court's conclusion that Kucel paid under a mistake of fact, although we need not discuss that issue because accord and satisfaction fails for lack of accord in any event.

of interest the parties intended when the note does not specify. *See* U.C.C. § 3–118 comment 1.

■ The promissory note states, "interest, precomputed to the due dates, is included in the foregoing installments." Although the note does not state on its face an annual percentage rate, the note clearly provides a fixed amount of interest. One need not look beyond the face of the note to ascertain the sum of principal and interest owing each month, or $17,838.51, and the total principal and interest to be paid, or $1,712,496.96. Although the "precomputed note" does not specify interest separately from principal, it nevertheless specifies interest, and U.C.C. § 3–118(d) does not apply.

■ The district court also relied on U.C.C. § 3–119(a), which provides:

> As between the obligor and his immediate obligee or any transferee the terms of an instrument may be modified or affected by any other written agreement executed as a part of the same transaction. . . .

This provision merely applies the "ordinary rule [of contracts] that writings executed as part of the same transaction are to be read together as a single agreement." U.C.C. § 3–119 comment 3. The district court examined several documents that were executed with the note, including the chattel mortgage and security agreement, aircraft bill of sale, and statement of account, to determine that the principal amount of the loan was $1,082,678.24. From that figure and the information in the note, the annual interest rate was calculated to be 12.7198%. Although reference to these additional documents under U.C.C. § 3–119(a) was not necessary to hold that the note specified interest, it was not improper.[2] The district court properly held that the judgment rate of interest did not apply to the note.

2. Ironically, Kucel argues against the court's considering these additional documents to determine whether the note specifies an interest rate, but asks us to apply the 9% judgment rate to $1,082,678.24—a figure Kucel can obtain only by referring to the additional documents also.

## IV

Heller argues that the district court clearly erred in calculating the amount of damages. Specifically, Heller asserts that the district court should have allowed Heller's service charge for prepayment, that the district court miscalculated the amount of overpayment, and that the district court failed to allow Heller interest between the last monthly payment and the prepayment. Kucel argues that the amount of damages was supported by expert testimony and thus was not clearly erroneous.

### A

■ The district court did not err in deciding that Heller could not assess Kucel a service charge for prepayment of the note. The note and other documents do not provide for prepayment, nor do they mention a service charge. Also, Heller did not disclose to Kucel before accepting prepayment that it was assessing a service charge. Accepting *arguendo* Heller's argument that the common law does not allow prepayment without the lender's consent, *see Marsh v. Stover,* 281 Ill.App. 590 (1935), *rev'd on other grounds,* 363 Ill. 490, 2 N.E.2d 559 (1936), it does not follow that a lender may make payment of a service charge the condition for prepayment without disclosing that condition to the borrower. Heller did not communicate to Kucel that prepayment was conditioned on the service charge. Thus, the service charge was properly denied.

### B

■ The district court clearly erred in determining the amount of overpayment and in not allowing Heller to retain interest accrued after the last monthly payment, for its calculations conflict with undisputed facts.

If the note did not provide for interest and if the district court could not consider the additional documents, the judgment rate would be applied to the face value of the note, or $1,712,496.96, and Kucel would have vastly underpaid Heller.

The district court held that 62 payments were made on the note, leaving 34 installments unpaid when Kucel negotiated to prepay the note. The district court also held that the amortization schedule labeled "Plaintiff's Exhibit 22," which Heller sent Kucel on September 16, 1981, and which is in the Appendix of this opinion, was the correct amortization table for the note. Finally, the court held that the first payment on the note was made when the note was executed, and that the payment was reflected on the amortization table as a lower initial balance for 2/28/78. Based on these undisputed findings, the proper award to Kucel is $7,132.99, not $42,893.40 as the district court determined.

To explain the correct amount of damages, we must explain the amortization table in the Appendix. We have added the left-hand or "Payment No." column for convenience. The next column ("Date") lists the payment dates, beginning with the first payment when the note was executed.[3] The third column ("Principal") lists the principal remaining *after payment on that date*. Thus, to determine the principal owing after payment on, for example, 3/28/83, one must look in the "Principal" column for 3/28/83, and not at the next line down. The remaining columns list the interest recovered, principal recovered, and amount of payment due, respectively.

The district court held that 62 payments had been made. Counting 2/28/78 as the date of the first payment, the 62d payment was due on 3/28/83. The principal remaining after that payment was $524,329.06. Kucel thus overpaid the note by $540,799.35 less $524,329.06, or $16,470.29. Interest accrued on the unpaid principal from its due date until the prepayment on May 16, 1983. Thus Kucel owed Heller 45 days of interest, or $8,222.40.[4] Finally, Kucel owed Heller $1,114.90 in late fees, as the district court found. The proper award to Kucel should therefore be:

| | | |
|---|---|---|
| Amount Paid | $540,799.35 | |
| Principal after 62d Payment | 524,329.06 | |
| Unadjusted difference | $ 16,470.29 | $16,470.29 |
| Adjustments to difference: | | |
| Late Charges Owing | $ 1,114.90 | |
| Interest Owing | 8,222.40 | |
| Amount Kucel owed Heller | $ 9,337.30 | ($ 9,337.30) |
| Amount Kucel overpaid Heller | | $ 7,132.99 |

We remand for the district court to enter judgment for Kucel in the amount of $7,132.99.[5]

### C

Kucel argues that the court's decision on damages was not plain error because it was based on an expert witness's testimony. We disagree. The expert admitted he did not know how many payments had been made, then assumed the principal listed under 5/28/83 was correct for discussion. He also testified the actual figures would vary depending on the actual number of payments made. The undisputed facts and the expert's assumed amounts cannot be reconciled. Therefore, it is clear

---

**3.** The actual payment dates were the first day of the month immediately following the date listed on the amortization table. We use the dates listed on the amortization table for convenience.

**4.** Calculated as follows:

$$\$524{,}329.06 \times \frac{45}{365} \times .127198$$

The 45 represents the 45 days between April 1, 1983, when the 62d payment was due, and the prepayment on May 16, 1983.

**5.** We can but guess exactly how the district court misread the amortization table to determine that the difference in payment and principal outstanding was $42,893.40. The court may have miscounted and thought that the payment due 5/28/83 was payment 62 instead of payment 64. More likely, it counted down the right-hand or "Payment" column, forgot to count 2/28/78 as the first payment because no payment was listed in the right-hand column, then determined that 4/28/83 was the 62d payment. The court then looked to the next line (5/28/83) to determine the outstanding principal. In either scenario, the court clearly erred.

Because the court used the principal amount from the payment dated 5/28/83, it assumed that no interest was due for the prepayment made on 5/16/83. This too was error since the 62d payment was due April 1, 1983 (3/28/83 on the schedule), 45 days before the prepayment was made.

Finally, we do not believe this approach constitutes a new theory on appeal and that Heller waived it. We view the error as purely mechanical in the judgment itself and not the trial—an error we can readily cure based on undisputed evidence in the record.

error to rely on the expert's testimony as the basis of the district court's award.

## V .

■ Texas permits the recovery of "reasonable attorney's fees" if a claim is founded on "an oral or written contract." Tex. Rev.Civ.Stat. art. 2226 (current version at Tex.Civ.Prac. & Rem.Code § 38.001(8)). Although Kucel's claim was for money had and received, the resolution of that claim depended entirely on the interpretation of the promissory note. Thus, his claim was sufficiently founded on contract that Texas courts would likely award fees under art. 2226. *See Exxon Corp. v. Bell,* 695 S.W.2d 788, 791 (Tex.App.—Texarkana 1985, no writ) (award of fees in conversion action founded on contract interpretation). In contrast, Illinois does not permit recovery of attorney's fees in suits on a note or other contract. *See Community Consolidated School District v. Meneley Construction Co.,* 86 Ill.App.3d 1101, 42 Ill. Dec. 571, 409 N.E.2d 66 (1980) (no statutory basis for recovery of fees in contract claim).

Heller argues that Kucel was not entitled to attorney's fees because Illinois law controls the award of fees. Kucel responds that the law of the forum state governs the award of attorney's fees and thus Texas law applies. Kucel argues that, in any event, Heller waived its claim that Illinois law governs the question.[6]

## A

■ The award of attorney's fees is part of the substantive right of a suit. *Missouri State Insurance Co. v. Jones,* 290 U.S. 199, 202, 54 S.Ct. 133, 133, 78 L.Ed. 267 (1933). Thus, the award of attorney's fees in a diversity case depends on the law of the state whose rules govern the substantive claims. *See Prudential Insurance Co. v. Carlson,* 126 F.2d 607, 611 (10th Cir.1942). In this case, then, Texas law may control the award of fees, not because Texas is the forum state, but only

if Texas law governs the other substantive rights.

To determine which state's substantive laws control this case, we must follow the choice-of-law principles of the forum state, Texas. *See Klaxon Co. v. Stentor Electric Manufacturing Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Texas recently changed its choice-of-law rules to adopt a "significant relationship" test, stating,

> [I]n all choice of law cases, except those contract cases in which the parties have agreed to a valid choice of law clause, the law of the state with the most significant relationship to the particular substantive issue will be applied to resolve that issue.

*Duncan v. Cessna Aircraft Co.,* 665 S.W.2d 414, 421 (Tex.1984). For cases involving contracts with choice-of-law clauses, the rule remains that if the parties agree that the contract will be governed by the laws of a particular state, then that intention prevails. *See Austin Building Co. v. National Union Fire Insurance Co.,* 432 S.W.2d 697, 701 (Tex.1968).

■ Kucel and Heller agreed in the promissory note that "this Note and the obligations provided for hereunder shall be governed by the laws of the State of Illinois." No one disputes the validity of this choice-of-law provision. The district court applied Illinois law to construe the note and to award prejudgment interest, but apparently viewed the action for money had and received as arising under Texas law and therefore awarded attorney's fees. We see a contradiction in saying on the one hand that the action for money had and received is inextricably intertwined with the interpretation of the contract in order to award fees under Texas law, but on the other in saying the action and the interpretation of the note are not intertwined in order to avoid the choice-of-law provision. The proper position, we hold, is that the choice-of-law provision governs both the interpretation of the contract and the action for money had and received, which are inextricably intertwined. Thus, Illinois law

6. Because the elements of a claim for money had and received are the same under Texas and

Illinois law, resolution of the choice-of-law question affects only the award of fees.

controls and Kucel may not recover attorney's fees.

### B

In order to escape the dilemma posed by the contradictory characterizations in the choice-of-law and attorney's fees arguments, Kucel argues that Heller waived its right to assert that Illinois law governed the award of fees.

Under federal pleading requirements, Heller need not plead the applicability of Illinois law to preserve a choice-of-law question. *Lumbermen's Mutual Casualty Co. v. Norris Grain Co.*, 343 F.2d 670, 685 (8th Cir.1965); 5 C. Wright & A. Miller, Federal Practice & Procedure § 1253 (1969). Nor must Heller prove in federal court the content of Illinois law or show that it differs from Texas law, for federal courts are required to take judicial notice of the content of the laws of every state in the Union. *Lamar v. Micou*, 114 U.S. 218, 223, 5 S.Ct. 857, 859, 29 L.Ed. 94 (1885). Nevertheless, Heller does have an obligation to call the applicability of another state's law to the court's attention in time to be properly considered. *Prudential Insurance*, 126 F.2d at 611.

In addition to the notice provided by the choice-of-law provision in the promissory note, Heller raised the choice-of-law issue in its motion to dismiss, filed November 22, 1983. Heller again indicated to the court that Texas law did not apply in its amended motion to dismiss, filed July 27, 1984. Both motions were pending when the joint pretrial order was filed November 30, 1984. The joint pretrial order does not preclude consideration of choice-of-law questions because it stated that the motions to dismiss were outstanding and itself contained no agreement about the applicability of either Texas or Illinois law. Consequently, Heller satisfied its obligation to raise the choice-of-law issue before the court. The issue was not waived.[7]

### VI

Fed.R.Civ.P. 11 provides that every pleading or motion be signed and that the signature certify that the attorney

> has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

If an attorney signs a motion in violation of the rule, the court may impose "an appropriate sanction." The sanction may be reversed only for "abuse of discretion." *Southern Leasing Partners, Ltd. v. McMullan*, 801 F.2d 783, 787–88 (5th Cir. 1986).

The district court imposed sanctions on Loomis for signing the motion for reconsideration of the award of attorney's fees. The district court denied the motion because it held that Heller had waived the applicability of Illinois law to attorney's fees and because Heller failed to prove Illinois law at trial. In light of the unpersuasiveness of the motion and what the district court viewed as its paucity of authority, the district court believed the motion to be frivolous and awarded sanctions.

We have in this opinion ruled that Heller did not waive the applicability of Illinois law to attorney's fees. We have also explained that, unlike state practice, a party need not prove the law of a state in federal court. Thus, the motion for reconsideration was not meritless. The arguments the district court thought barren of authority and frivolous have persuaded us on appeal. We therefore reverse the award of sanctions.

### VII

In sum, we affirm the district court's determination that Heller is liable to Kucel

---

7. Nor do we believe Heller waived the issue by not raising it again until the motion for reconsideration of attorney's fees. Having once properly notified the court of the issue, it satisfied its duty.

for money had and received. We also affirm on cross-appeal the district court's determination that U.C.C. § 3–118(d) does not apply to the promissory note. However, we vacate the award of damages and remand for the district court to enter an award in favor of Kucel in the amount of $7,132.99, with prejudgment interest on that amount at the rate of 12.7198% per annum from May 16, 1983, until September 16, 1985, and postjudgment interest at the rate of 7.91% per annum from September 16, 1985, until the date of payment. We also reverse the award of attorney's fees to Kucel and reverse the imposition of a sanction on Wendell Loomis. The judgment of the district court is AFFIRMED in part, REVERSED in part, VACATED in part, and REMANDED.

APPENDIX

PLAINTIFF'S EXHIBIT 22

LUCEY PRODUCTS

AMORTIZATION SCHEDULE—RULE OF 78's

| [Payment No.] | Date | Principal | Interest (12.719828%) | Principal Recovery | Payment |
|---|---|---|---|---|---|
| [1] | 2/28/78 | $1,064,839.81 | | | |
| [2] | 3/28/78 | $1,060,122.52 | $13,121.22 | $4,717.29 | $17,838.51 |
| [3] | 4/28/78 | $1,055,267.12 | $12,983.10 | $4,855.41 | $17,838.51 |
| [4] | 5/28/78 | $1,050,273.59 | $12,844.99 | $4,993.52 | $17,838.51 |
| [5] | 6/28/78 | $1,045,141.95 | $12,706.87 | $5,131.64 | $17,838.51 |
| [6] | 7/28/78 | $1,039,872.19 | $12,568.75 | $5,269.76 | $17,838.51 |
| [7] | 8/28/78 | $1,034,464.31 | $12,430.63 | $5,407.88 | $17,838.51 |
| [8] | 9/28/78 | $1,028,918.31 | $12,292.51 | $5,546.00 | $17,838.51 |
| [9] | 10/28/78 | $1,023,234.20 | $12,154.39 | $5,684.12 | $17,838.51 |
| [10] | 11/28/78 | $1,017,411.96 | $12,016.28 | $5,822.23 | $17,838.51 |
| [11] | 12/28/78 | $1,011,451.61 | $11,878.16 | $5,960.35 | $17,838.51 |
| [12] | 1/28/79 | $1,005,353.14 | $11,740.04 | $6,098.47 | $17,838.51 |
| [13] | 2/28/79 | $999,116.55 | $11,601.92 | $6,236.59 | $17,838.51 |
| [14] | 3/28/79 | $992,741.85 | $11,463.80 | $6,374.71 | $17,838.51 |
| [15] | 4/28/79 | $986,229.02 | $11,325.69 | $6,512.82 | $17,838.51 |
| [16] | 5/28/79 | $979,578.08 | $11,187.57 | $6,650.94 | $17,838.51 |
| [17] | 6/28/79 | $972,789.02 | $11,049.45 | $6,789.06 | $17,838.51 |
| [18] | 7/28/79 | $965,861.84 | $10,911.33 | $6,927.18 | $17,838.51 |
| [19] | 8/28/79 | $958,796.55 | $10,773.21 | $7,065.30 | $17,838.51 |
| [20] | 9/28/79 | $951,593.13 | $10,635.10 | $7,203.41 | $17,838.51 |
| [21] | 10/28/79 | $944,251.60 | $10,496.98 | $7,341.53 | $17,838.51 |
| [22] | 11/28/79 | $936,771.95 | $10,358.86 | $7,479.65 | $17,838.51 |
| [23] | 12/28/79 | $929,154.18 | $10,220.74 | $7,617.77 | $17,838.51 |
| [24] | 1/28/80 | $921,398.29 | $10,082.62 | $7,755.89 | $17,838.51 |
| [25] | 2/28/80 | $913,504.29 | $9,944.50 | $7,894.01 | $17,838.51 |
| [26] | 3/28/80 | $905,472.16 | $9,806.39 | $8,032.12 | $17,838.51 |
| [27] | 4/28/80 | $897,301.92 | $9,668.27 | $8,170.24 | $17,838.51 |
| [28] | 5/28/80 | $888,993.56 | $9,530.15 | $8,308.36 | $17,838.51 |
| [29] | 6/28/80 | $880,547.09 | $9,392.03 | $8,446.48 | $17,838.51 |
| [30] | 7/28/80 | $871,962.49 | $9,253.91 | $8,584.60 | $17,838.51 |
| [31] | 8/28/80 | $863,239.78 | $9,115.80 | $8,722.71 | $17,838.51 |
| [32] | 9/28/80 | $854,378.94 | $8,977.68 | $8,860.83 | $17,838.51 |
| [33] | 10/28/80 | $845,379.99 | $8,839.56 | $8,998.95 | $17,838.51 |
| [34] | 11/28/80 | $836,242.93 | $8,701.44 | $9,137.07 | $17,838.51 |
| [35] | 12/28/80 | $826,967.74 | $8,563.32 | $9,275.19 | $17,838.51 |
| [36] | 1/28/81 | $817,554.44 | $8,425.21 | $9,413.30 | $17,838.51 |
| [37] | 2/28/81 | $808,008.01 | $8,287.09 | $9,551.42 | $17,838.51 |
| [38] | 3/28/81 | $798,313.47 | $8,148.97 | $9,689.54 | $17,838.51 |
| [39] | 4/28/81 | $788,485.81 | $8,010.85 | $9,827.66 | $17,838.51 |
| [40] | 5/28/81 | $778,520.04 | $7,872.73 | $9,965.78 | $17,838.51 |

| [Payment No.] | Date | Principal | Interest (12.719828%) | Principal Recovery | Payment |
|---|---|---|---|---|---|
| [41] | 6/28/81 | $768,416.14 | $7,734.61 | $10,103.90 | $17,838.51 |
| [42] | 7/28/81 | $758,174.13 | $7,596.50 | $10,242.01 | $17,838.51 |
| [43] | 8/28/81 | $747,794.00 | $7,458.38 | $10,380.13 | $17,838.51 |
| [44] | 9/28/81 | $737,275.75 | $7,320.26 | $10,518.25 | $17,838.51 |
| [45] | 10/28/81 | $726,619.38 | $7,182.14 | $10,656.37 | $17,838.51 |
| [46] | 11/28/81 | $715,824.89 | $7,044.02 | $10,794.49 | $17,838.51 |
| [47] | 12/28/81 | $704,892.29 | $6,905.91 | $10,932.60 | $17,838.51 |
| [48] | 1/28/82 | $693,821.57 | $6,767.79 | $11,070.72 | $17,838.51 |
| [49] | 2/28/82 | $682,612.73 | $6,629.67 | $11,208.84 | $17,838.51 |
| [50] | 3/28/82 | $671,265.77 | $6,491.55 | $11,346.96 | $17,838.51 |
| [51] | 4/28/82 | $659,780.69 | $6,353.43 | $11,485.08 | $17,838.51 |
| [52] | 5/28/82 | $648,157.50 | $6,215.32 | $11,623.19 | $17,838.51 |
| [53] | 6/28/82 | $636,396.19 | $6,077.20 | $11,761.31 | $17,838.51 |
| [54] | 7/28/82 | $624,496.76 | $5,939.08 | $11,899.43 | $17,838.51 |
| [55] | 8/28/82 | $612,459.21 | $5,800.96 | $12,037.55 | $17,838.51 |
| [56] | 9/28/82 | $600,283.54 | $5,662.84 | $12,175.67 | $17,838.51 |
| [57] | 10/28/82 | $587,969.75 | $5,524.72 | $12,313.79 | $17,838.51 |
| [58] | 11/28/82 | $575,517.85 | $5,386.61 | $12,451.90 | $17,838.51 |
| [59] | 12/28/82 | $562,927.83 | $5,248.49 | $12,590.02 | $17,838.51 |
| [60] | 1/28/83 | $550,199.69 | $5,110.37 | $12,728.14 | $17,838.51 |
| [61] | 2/28/83 | $537,333.43 | $4,972.25 | $12,866.26 | $17,838.51 |
| [62] | 3/28/83 | $524,329.06 | $4,834.13 | $13,004.38 | $17,838.51 |
| [63] | 4/28/83 | $511,186.56 | $4,696.02 | $13,142.49 | $17,838.51 |
| [64] | 5/28/83 | $497,905.95 | $4,557.90 | $13,280.61 | $17,838.51 |
| [65] | 6/28/83 | $484,487.22 | $4,419.78 | $13,418.73 | $17,838.51 |
| [66] | 7/28/83 | $470,930.37 | $4,281.66 | $13,556.85 | $17,838.51 |
| [67] | 8/28/83 | $457,235.41 | $4,143.54 | $13,694.97 | $17,838.51 |
| [68] | 9/28/83 | $443,402.32 | $4,005.43 | $13,833.08 | $17,838.51 |
| [69] | 10/28/83 | $429,431.12 | $3,867.31 | $13,971.20 | $17,838.51 |
| [70] | 11/28/83 | $415,321.80 | $3,729.19 | $14,109.32 | $17,838.51 |
| [71] | 12/28/83 | $401,074.36 | $3,591.07 | $14,247.44 | $17,838.51 |
| [72] | 1/28/84 | $386,688.80 | $3,452.95 | $14,385.56 | $17,838.51 |
| [73] | 2/28/84 | $372,165.13 | $3,314.83 | $14,523.68 | $17,838.51 |
| [74] | 3/28/84 | $357,503.33 | $3,176.72 | $14,661.79 | $17,838.51 |
| [75] | 4/28/84 | $342,703.42 | $3,038.60 | $14,799.91 | $17,838.51 |
| [76] | 5/28/84 | $327,765.39 | $2,900.48 | $14,938.03 | $17,838.51 |
| [77] | 6/28/84 | $312,689.25 | $2,762.36 | $15,076.15 | $17,838.51 |
| [78] | 7/28/84 | $297,474.98 | $2,624.24 | $15,214.27 | $17,838.51 |
| [79] | 8/28/84 | $282,122.60 | $2,486.13 | $15,352.38 | $17,838.51 |
| [80] | 9/28/84 | $266,632.10 | $2,348.01 | $15,490.50 | $17,838.51 |
| [81] | 10/28/84 | $251,003.48 | $2,209.89 | $15,628.62 | $17,838.51 |
| [82] | 11/28/84 | $235,236.74 | $2,071.77 | $15,766.74 | $17,838.51 |
| [83] | 12/28/84 | $219,331.88 | $1,933.65 | $15,904.86 | $17,838.51 |
| [84] | 1/28/85 | $203,288.91 | $1,795.54 | $16,042.97 | $17,838.51 |
| [85] | 2/28/85 | $187,107.81 | $1,657.42 | $16,181.09 | $17,838.51 |
| [86] | 3/28/85 | $170,788.60 | $1,519.30 | $16,319.21 | $17,838.51 |
| [87] | 4/28/85 | $154,331.27 | $1,381.18 | $16,457.33 | $17,838.51 |
| [88] | 5/28/85 | $137,735.83 | $1,243.06 | $16,595.45 | $17,838.51 |
| [89] | 6/28/85 | $121,002.26 | $1,104.94 | $16,733.57 | $17,838.51 |
| [90] | 7/28/85 | $104,130.58 | $966.84 | $16,871.68 | $17,838.51 |
| [91] | 8/28/85 | $87,120.78 | $828.71 | $17,009.80 | $17,838.51 |
| [92] | 9/28/85 | $69,972.86 | $690.59 | $17,147.92 | $17,838.51 |
| [93] | 10/28/85 | $52,686.82 | $552.47 | $17,286.04 | $17,838.51 |
| [94] | 11/28/85 | $35,262.67 | $414.35 | $17,424.16 | $17,838.51 |
| [95] | 12/28/85 | $17,700.39 | $276.24 | $17,562.27 | $17,838.51 |
| [96] | 1/28/86 | $.00 | $138.12 | $17,700.39 | $17,838.51 |