GUIDRY, J.
*612 Plaintiffs appeal a judgment dismissing a portion of their claims against the defendants pursuant to the defendants' invocation of a choice of law provision, which the defendants first raised twelve years after the commencement of litigation between the parties. For the following reasons, we affirm.
FACTS AND PROCEDURAL HISTORY
On December 1, 2004, Hawkeye Energy, Inc., H.L. Hawkins, Jr., Inc., and H.L. Hawkins, III and John C. Lovell Jr., as co-executors of the Succession of H.L. Hawkins, Jr. (collectively "plaintiffs"), filed a petition for damages against The Meridian Resource and Exploration LLC and The Meridian Resource Corporation[1] (collectively "Meridian") based on an agreement between H.L. Hawkins, Jr. and Texas Meridian Resources Exploration, Inc. (also hereinafter referred to simply as "Meridian") that was executed in 1993. According to the petition, the 1993 agreement between Hawkins, Jr. and Meridian "established a framework for Mr. Hawkins to invest as a non-operator in drilling, exploration and production operations undertaken by Meridian." Among the provisions of the 1993 agreement was a master participation agreement and a joint operating agreement.[2]
From 1994 to 1998, Hawkins, Jr. agreed to participate with Meridian in several drilling prospects, including the Holmwood *613 Prospect located in Calcasieu Parish, on lands owned in fee by Amoco Production Company. A separate mineral lease and joint exploration agreement existed between Meridian and Amoco relative to the Holmwood Prospect. An initial well, the Amoco Ben Todd No. 2 well, drilled by Amoco, proved productive, and according to the petition, Meridian and Hawkins, Jr. participated in the cost of the drilling operations for that well and shared in the revenue of the well.
Meridian then desired to drill a second well on the property, the TMRX-Ben Todd No. 1 well, in an area where Amoco did not consent to drilling operations. Upon learning of Meridian's intent to drill the well without its consent, Amoco filed a declaratory judgment action against Meridian in federal district court in Texas. Later, when Amoco discovered that Meridian had begun surface operations for the disputed well, Amoco amended its suit against Meridian to assert breach of contract and damages. The federal district court eventually rendered judgment in favor of Amoco: dissolving its lease agreement with Meridian, terminating Meridian's interests in the disputed well and in the previously drilled producing wells, and awarded damages. Except for the award of legal interest on the damages award, the district court's judgment was affirmed on appeal. See Amoco Production Company v. Texas Meridian Resources Exploration Inc., 180 F.3d 664 (5th Cir. 1999).
Once the Amoco litigation was finally concluded, Meridian sent an invoice for what it calculated as Hawkins, Jr.'s "pro rata portion of the judgment and post judgment interest" from the Amoco litigation in a letter to Hawkins, Jr. dated August 30, 1999.[3] By a letter dated September 17, 1999, Hawkins III and Lovell Jr., as co-executors of the Succession of H.L. Hawkins, Jr.,[4] issued payment from the estate of Hawkins, Jr. for the sum demanded with "full reservation of any and all rights and remedies that the Estate may have, including (without limitation) the right to contest all or a portion of [the] payment, the right to audit and contest prior invoices and statements, and the right to assert a claim for any and all damages."
Over five years later, the plaintiffs instituted the present action. In the lawsuit, the plaintiffs claimed that Meridian's action of drilling the well without Amoco's consent, and falsely representing to Hawkins, Jr. that Amoco had consented to the drilling, constituted fraud and violated duties that Meridian owed to Hawkins, Jr. under the 1993 agreement, which caused the plaintiffs to sustain millions of dollars in lost investments, realized and future revenues and profits, and other out-of-pocket expenses. The plaintiffs also asserted accounting claims based on various audits that were conducted of Meridian's operations pursuant to the 1993 agreement. Plaintiffs later amended their petition to add James T. Bond as a defendant and expanded the allegations supporting their breach of contract claim.[5] Meridian filed *614 answers generally denying liability for all the claims asserted by the plaintiffs in the original and amended petitions.
On February 15, 2008, the plaintiffs filed a motion seeking a partial summary judgment on the issue of Meridian's liability. In the motion, the plaintiffs argued that "[b]ased on Meridian's judicially established malfeasance," they were entitled to partial summary judgment against Meridian on liability. Meridian filed an opposition to the motion for partial summary judgment asserting, in part, that the plaintiffs' claims had a "prescription problem," particularly to the extent that the plaintiffs' claims were premised on allegations of fraud.
On July 7, 2008, the trial court signed a judgment granting the plaintiffs' motion for partial summary judgment,[6] based in pertinent part on the following findings:
Meridian, as operator or manager of the parties' jointly owned property, specifically the Amoco lease, represented Hawkins' interest in the Amoco litigation pursuant to the parties' contract, the Joint Operating Agreement attached as Exhibit A to the petition. The judgment rendered in Amoco Production Company v. Texas Meridian found that Meridian acted in bad faith and therefore the Amoco lease should be cancelled. It is undisputed that this judgment resulted in a loss to Hawkins of its entire interest in the lease as well as its pro-rata share of mineral revenues awarded to Amoco....
...
This Court finds that Hawkins was in direct contractual privity with Meridian. The parties' contract, the Joint Operating Agreement, not only obligated Meridian to prudently and responsibly represent the interests of its investors, including Hawkins, but it also obligated Meridian to defend Hawkins' interests in the lawsuit with Amoco....
In the end, this Court finds that there is no basis to allow Meridian to relitigate those issues already decided by the federal court in Amoco. The purpose of both federal and state law on res judicata is essentially the same, which is to promote judicial efficiency and final resolution of disputes by preventing needless relitigation. For these reasons, this Court finds that there are no genuine issues of material fact in this case regarding the liability of [Meridian] as that matter has been judicially established in federal court as a matter of law. Thus, this Court will grant the Motion for Partial Summary Judgment filed by the Plaintiffs against Meridian on liability for breach of contract. Judgment to be signed accordingly. [Emphasis added.]
In the meantime, Meridian continued to seek dismissal of the plaintiffs' non-accounting claims based on prescription. First, Meridian filed a motion for partial summary judgment, asserting that the *615 plaintiffs' claims of fraud and misrepresentation were prescribed pursuant to either La. C.C. art. 2032 or 3492, which the trial court denied in a judgment signed August 6, 2008. Later, Meridian filed a peremptory exception, again asserting that the plaintiffs' non-accounting claims were prescribed, but this time based on the assertion that the "claims against Meridian [arose] from a joint venture," and that as such, La. R.S. 12:1502 applied to bar the plaintiffs' non-accounting claims.
Before the trial court held a hearing on the peremptory exception, Meridian filed an "Amended and Superseding Peremptory Exception of Prescription"[7] on May 12, 2016, wherein Meridian amended its earlier exception to completely replace the original exception and to instead plead the applicability of Texas's statute of limitations to all but the plaintiffs' non-accounting claims. In its amended exception, Meridian asserted that the sole basis for its "alleged liability ... is breach of contract," and it pointed out that the July 7, 2008 partial summary judgment only held it liable for breach of contract. The master participation agreement included in the parties' 1993 agreement provided:
8.
APPLICABLE LAW
THIS PARTICIPATION AGREEMENT SHALL BE INTERPRETED AND CONSTRUED[8] ACCORDING TO THE LAWS OF THE STATE OF TEXAS. IN THE EVENT THERE IS A CONTRACTUAL DISPUTE WHICH CANNOT BE RESOLVED AMONG YOU AND [MERIDIAN], ANY LAWSUIT BROUGHT FORTH RELATIVE TO SUCH DISPUTE SHALL BE TRIED IN THE APPROPRIATE COURT OF LAW IN THE STATE OF TEXAS.[9 ]
Thus, citing Tex. Civ. Prac. & Rem. Code § 16.051 and Stine v. Stewart, 80 S.W.3d 586, 592 (Tex. 2002) (holding that under Texas law a claim of breach of contract is subject to a four-year statute of limitations), Meridian urged the trial court to find the plaintiffs' non-accounting claims to be prescribed.
The plaintiffs opposed Meridian's amended and superseding peremptory exception, arguing that application of Louisiana choice of law rules dictated that Louisiana's prescriptive statutes apply, or alternatively, that: (1) Meridian should be found to have waived its right to assert the choice of law provision considering that the matter had been in litigation for over ten years and that until it filed the amended exception, Meridian had presented its defense solely under Louisiana law; or (2) judicial estoppel should apply to bar Meridian from presenting a defense *616 under Texas law. Despite these arguments, following a hearing held on June 13, 2016, the trial court sustained Meridian's peremptory exception raising prescription based on Texas law and accordingly dismissed all of the plaintiffs' non-accounting claims with prejudice in a judgment signed on August 19, 2016. The trial court further designated the judgment as a final judgment under La. C.C.P. art. 1915(B), finding that because "the claims dismissed by this judgment are a completely separate cause of action from plaintiffs' remaining claims," there was no just reason to delay an appeal of the matter.[10] The plaintiffs filed a motion for devolutive appeal on September 2, 2016.
ASSIGNMENTS OF ERROR
1. The trial court erred when it allowed Meridian to invoke Texas law twelve years into the litigation and after a judgment had been rendered against it under Louisiana law.
2. The trial court erred when it violated Louisiana Civil Code article 3549 and applied a Texas statute of limitations, rather than Louisiana's ten-year prescriptive period for contractual obligations, to decide Meridian's Amended Exception of Prescription.
DISCUSSION
In their first assignment of error, the plaintiffs assert three separate arguments premised on the principles of waiver, judicial estoppel, and judicial admission as grounds for reversing the judgment of the trial court.
Waiver
The first argument of waiver (as it relates to choice of law), while recognized in state law, has principally been developed under federal law, wherein it has generally been found that failure to raise or assert a contractual choice of law provision in the trial court will constitute a waiver of the provision. For example, in Fruge v. Amerisure Mutual Insurance Company, 663 F.3d 743, 747 (5th Cir. 2011), the U.S. Fifth Circuit observed that the defendant raised for the first time, on appeal, that the district court should have applied Texas rather than Louisiana law, observing:
However, Amerisure briefed only Louisiana law before the district court , never asserting that Texas law should apply or that the district court should engage in a choice-of-law analysis. Indeed, Amerisure relied exclusively on Louisiana law in its motion for summary judgment and in opposing Chubb's motion for summary judgment at the district court level . Now, for the first time on appeal , Amerisure argues that the district court should have independently analyzed Louisiana's choice-of-law rules and applied Texas law. Failure to raise an argument before the district court waives that argument, including an argument for choice-of-law analysis. Amerisure has thus waived its choice-of-law argument. [Emphasis added; footnote omitted.]
In Farm Credit Bank of Texas v. Fireman's Fund Insurance Company, 822 F.Supp. 1251, 1258 (W.D. La. 1993) (ruling on reconsideration), aff'd, 50 F.3d 1033 (5th Cir. 1995), the federal district court similarly found waiver barred the plaintiff's attempt to assert application of a *617 different choice of law, observing the following:
Plaintiff argues next that newly discovered evidence reveals the place of contract to be California, where the law on waiver is more favorable to plaintiff than Louisiana's. This comes too late. Plaintiff filed this suit in March 1991. But until our 26 April 1993 ruling, plaintiff never mentioned choice of law. In fact, plaintiff argued Louisiana law on the waiver issue. Now, after Louisiana law has yielded an unfavorable result, plaintiff asks for reconsideration on the basis of newly discovered evidence obtained through the deposition of Carolyn Abbott (the Fireman's Fund employee whose signature appears on the face of the bond) taken the day after this court ruled on the matter. Because this evidence was available to plaintiff long before it responded to the summary judgment motion, we find reconsideration unwarranted under Rule 59(e).
Notably, although the issue of choice of law was raised in the trial court in Farm Credit Bank, it was raised after judgment, on a motion for reconsideration, rather than before the case was submitted. Additionally, the assertion of choice of law in that case was raised by the plaintiff, which was the party responsible for initiating the action under Louisiana law, and thus establishing the application of Louisiana law to the proceedings.
Finally, in Kucel v. Walter E. Heller & Company, 813 F.2d 67, 74 n.7 (5th Cir. 1987), the defendant raised the issue of choice of law at the commencement of litigation in the district court, and as a result, the district court applied Illinois rather than Texas (the forum state) law to the trial on the merits of the suit; however, following the trial on the merits, in ancillary proceedings for attorney fees, the defendant failed to re-urge application of Illinois law as the contractually-designated law chosen by the parties. So despite being aware of the choice of law provision in the parties' contract, the district court applied the forum state's (Texas) law rather than the contractually-designated law of Illinois in post-judgment proceedings to decide the ancillary issue of attorney fees. In reversing the district court's attorney fee award, the appellate court, in a footnote, held "[n]or do we believe [the defendant] waived the issue by not raising it again until the motion for reconsideration of attorney's fees [which were allowed under Texas law, but not under Illinois law]. Having once properly notified the court of the issue, it satisfied its duty." Kucel, 813 F.2d at 74 n.7. Of particular note here is the Kucel court's pronouncement of the principle that a party has "an obligation to call the applicability of another state's law to the court's attention in time to be properly considered." Kucel, 813 F.2d at 74.
In line with federal jurisprudence on this issue, this court in Denham Homes, L.L.C. v. Teche Fed. Bank, 14-1576, p. 6 n.3 (La. App. 1st Cir. 9/18/15), 182 So.3d 108, 113 n.3, citing Fruge, observed the following:
We note that both the settlement agreement and Plan contain choice-of-law provisions not referenced by the parties herein.
....
We find that the parties have waived the above-referenced choice-of-law provisions and that Louisiana law applies herein. The plaintiffs did not plead Illinois law in their petition and the parties' arguments in the district court and before this court all cite and rely upon Louisiana law. [Emphasis added.]
Hence, while the issue of choice of law was not raised by any of the parties in Denham Homes, it appears that this court gratuitously raised the issue simply to point out *618 that in reviewing the contracts in dispute in the matter, the choice of law provision had been recognized, but would not be considered for the reasons stated.
In the matter before us, although the litigation had been pending for more than a decade at the time Meridian raised the choice of law provision, the issue, nonetheless, was raised in the trial court prior to the case being submitted. And even though the trial court had rendered a partial summary judgment on the issue of Meridian's liability for the plaintiffs' non-accounting claims, the July 7, 2008 partial summary judgment was interlocutory and not a final judgment.[11] See La. C.C.P. art. 1915(B). But more importantly, the plaintiffs' assertion of waiver must be considered in light of Louisiana's procedural law regarding the raising of the objection of prescription. The Louisiana Code of Civil Procedure expressly provides that the objection of prescription can be plead "at any stage of the proceeding in the trial court prior to a submission of the case for a decision" or even on appeal. See La. C.C.P. arts. 928(B) and 2163.
Thus, considering the totality of the facts in this case and in light of this state's positive law regarding the raising of the objection of prescription, we cannot say that the trial court erred in rejecting the plaintiffs' claim that waiver precluded Meridian's tardy invocation of the applicability of Texas law.
Judicial Estoppel
Next, the plaintiffs argue that the trial court should have rejected Meridian's tardy assertion of the applicability of Texas law based on the principle of judicial estoppel. Judicial estoppel prohibits parties from deliberately changing positions according to the exigencies of the moment. The doctrine is intended to prevent the perversion of the judicial process and prevents playing fast and loose with the courts. To apply, courts look to whether: (1) the party against whom judicial estoppel is sought has asserted a legal position that is plainly inconsistent with a prior position; (2) a court accepted the prior position; and (3) the party did not act inadvertently. Hancock Bank of Louisiana v. C & O Enterprises, LLC, 14-0542, p. 7 (La. App. 1st Cir. 12/23/14), 168 So.3d 595, 600, writ denied, 15-0621 (La. 5/22/15), 171 So.3d 251.
In considering the first prong of this test, it is questionable whether Meridian can be said to have taken a "legal position" as to choice of law. While unquestionably, up until 2016, all of the arguments and defenses presented by the parties were presented under Louisiana law, nowhere in the record before us did Meridian expressly state that Louisiana law governed the dispute. Rather, Meridian's opposition to the plaintiffs' suit appears to be merely responsive to the plaintiffs' act of filing suit in Louisiana state court and presenting their claims under Louisiana law.
But even conceding the first prong of the three-prong test recited above, the trial court herein rejected Meridian's previous arguments and defenses regarding prescription under Louisiana law; hence, the second prong of judicial estoppel does not appear to have been met. Moreover, as for the final prong of judicial estoppel, rather than waiting to see if it prevailed on its alternative basis for seeking to have the plaintiffs' non-accounting claims dismissed as prescribed under Louisiana law, Meridian *619 withdrew its Louisiana-law-based peremptory exception before it was even decided and asserted its claim of prescription based on Texas's statute of limitations. Such behavior could be viewed as indicating that Meridian had inadvertently failed to realize the applicability of Texas law. Thus, considering that judicial estoppel is an equitable doctrine invoked at the discretion of the court,[12] we cannot say that the trial court abused its discretion in failing to invoke the doctrine to preclude Meridian's tardy assertion of the applicability of Texas law.
Judicial Confession
Louisiana Civil Code article 1853 states "[a] judicial confession is a declaration made by a party in a judicial proceeding. That confession constitutes full proof against the party who made it." A judicial confession is a party's explicit admission of an adverse factual element and has the effect of waiving evidence as to the subject of the admission-of withdrawing the subject matter of the confession from issue. Cichirillo v. Avondale Industries, Inc., 04-2894, p. 6 (La. 11/29/05), 917 So.2d 424, 429. But a judicial confession must be explicit and cannot be implied. Yesterdays of Lake Charles, Inc. v. Calcasieu Parish Sales and Use Tax Department, 15-1676, p. 30 (La. 5/13/16), 190 So.3d 710, 729.
As we previously stated, we have not found, nor have the plaintiffs pointed out, where Meridian has ever expressly stated that Louisiana law governs the parties' dispute. Hence, while Meridian's maintenance of a defense under Louisiana law for twelve years may have implied that Meridian conceded to the application of Louisiana law to the parties' dispute, the mere implication is not enough to support a finding that Meridian judicially confessed to the application of Louisiana law. Compare with Abshire v. Belmont Homes, Inc., 04-1200, p. 8 (La. App. 3d Cir. 3/2/05), 896 So.2d 277, 283, writ denied, 05-0862 (La. 6/3/05), 903 So.2d 458 (finding that the defendant had judicially confessed that Louisiana law applied based on the express statement made by defense counsel that "[a]s far as the application, we are both arguing Louisiana law. I don't think that's an issue.")
Accordingly, having considered all the arguments raised by the plaintiffs, we find no merit in any of the arguments and thus reject the plaintiffs' first assignment of error.
Choice of Law
In their second assignment of error, the plaintiffs argue that the trial court wrongly applied Louisiana's choice of law provisions, particularly La. C.C. art. 3549, in deciding this matter. We find no merit in this argument.
Louisiana Civil Code article 3549, titled "Law governing liberative prescription," states, in pertinent part:
B. When the substantive law of another state would be applicable to the merits of an action brought in this state, the prescription and peremption law of this state applies, except as specified below:
...
(2) If the action is not barred under the law of this state, the action shall be maintained unless it would be barred in the state whose law is applicable to the merits and maintenance of the action in this state is not warranted by the policies of this state and its relationship to the parties or the dispute nor by any compelling considerations of remedial justice. [Emphasis added.]
*620 In Turner v. Miller Transporters, Inc., 02-2278, p. 12 (La. App. 1st Cir. 6/27/03), 852 So.2d 478, opinion adhered to as modified on reh'g, 02-2278 (La. App. 1st Cir. 2/23/04), 876 So.2d 848, writs denied, 04-0762, 04-0804 (La. 5/21/04), 874 So.2d 174, 177, in determining whether Mississippi's statute of limitations should apply to the plaintiffs' claims based on Mississippi law being chosen by the parties as applying to the lease agreements in dispute, this court first observed:
In Louisiana, issues of conventional obligations are generally governed by the law expressly chosen or clearly relied upon by the parties, unless that law contravenes the public policy of the state whose law would otherwise be applicable if its policies would be more seriously impaired by not applying its law. La. C.C. arts. 3537 and 3540. There has been no viable demonstration that the policies of Louisiana would be more seriously impaired by applying Mississippi law to the consideration of the controverted issues.
Turner, 02-2278 at p. 10 n.3, 852 So.2d at 486 n.3. Then as to how the parties' choice of law applied to prescription, this court held:
In considering whether Louisiana prescription or the Mississippi statute of limitations applies, it has been noted that Louisiana generally permits parties to select the law that will determine the outcome of disputes involving a contract. ... Lessors have failed to suggest a public policy that would be violated by the application of the Mississippi statute of limitations pursuant to the governance of the contract under Mississippi law. Nor is this court aware of any adversely impacted public policy by the application of Mississippi law. The trial court did not err in its application of the Mississippi statute of limitations to lessors' claims for breach of contract.
Turner, 02-2278 at p. 12, 852 So.2d at 487.
Likewise, in the matter before us, we find no basis in public policy or compelling considerations of remedial justice that would justify the application of Louisiana prescription over the Texas statute of limitations in this matter; nor do we find the relationship of the parties to this state require such application. Therefore, we find no error in the trial court's application of La. C.C. art. 3549 and reject this assignment of error as well.
CONCLUSION
For the foregoing reasons, we find no error in the trial court's judgment sustaining the peremptory exception raising the objection of prescription. Accordingly, we affirm. All costs of this appeal are cast to the plaintiffs, Hawkeye Energy, Inc., H.L. Hawkins, Jr., Inc., and the Succession of H.L. Hawkins, Jr., as represented by its co-executors, H.L. Hawkins, III and John C. Lovell Jr.
AFFIRMED.

According to the 2005 affidavit of Lloyd V. DeLano, as chief accounting officer for The Meridian Resource Corporation, The Meridian Resource & Exploration LLC was, prior to its conversion to a Delaware limited liability company, a Texas corporation formerly known as Texas Meridian Resources Exploration, Inc. Additionally, The Meridian Resource & Exploration LLC is a subsidiary of The Meridian Resource Corporation. As such, we shall simply refer to the defendants as "Meridian" herein.

In an April 1, 1993 letter from Meridian to Hawkins, Jr., Meridian stated that Hawkins, Jr. had expressed "a desire to acquire interests in prospects and/or leases so acquired by [Meridian] and to participate in exploration, development and drilling operations conducted thereon." To that end, Meridian attached to the April 1, 1993 letter "a form of letter agreement entitled 'MASTER PARTICIPATION AGREEMENT' (including a form of Joint Operating Agreement attached thereto as Exhibit 'B')." In the letter, Meridian also stated that if and when it identified prospects for exploration and production, it would send a specified "NOTICE" to Hawkins, Jr., wherein if Hawkins, Jr. appropriately executed the "NOTICE," there would be in "force and effect" a contract between Meridian and Hawkins, Jr. of the form of the "MASTER PARTICIPATION AGREEMENT." The April 1, 1993 letter, which was accepted and agreed to by Hawkins, Jr.'s manager on April 7, 1993, expressly noted that:
The execution and delivery of this Letter Agreement shall not effect a contract or agreement or impose any duty, obligation, liability or responsibility on any party hereto as to any particular prospect. A contract or agreement as to any prospects identified by [Meridian] will be effected only when the undersigned and you have executed and delivered a form of NOTICE completed as hereinabove provided.
The master participation agreement attached, to the April 1, 1993 letter as exhibit "1," further contained the following provision:
Attached as Exhibit "B" hereto is a form of Operating Agreement. Such Operating Agreement shall be deemed to be in force and effect upon your execution of this Participation Agreement except, however, it is understood and agreed that wherever the Operating Agreement shall be in conflict with the terms of this Participation Agreement, the terms and provisions of this Participation Agreement shall control and prevail.

By a letter dated June 27, 1996, Meridian offered Hawkins, Jr. an opportunity to participate in the drilling and production of the TMRX-Ben Todd No. 1 well. Through his general manager, J.T. Bond, Hawkins, Jr. submitted a written response dated June 1, 1996, electing to participate. A notation on the response indicates that the response was mailed to Meridian on July 1, 1996, which suggests that the June 1, 1996 date should actually be July 1, 1996.

According to the petition in the instant matter, Hawkins, Jr. died "[d]uring the course of the litigation between Amoco and Meridian."

Some of the additional allegations included claims that Meridian and Bond failed to disclose: (1) the financial self-interest of Meridian personnel who made critical decisions regarding drilling the contested Amoco well; (2) critical information regarding the Amoco lawsuit, including settlement opportunities and the recommendation of counsel to settle; (3) favored treatment given Meridian-controlled non-operators and Meridian employees with regard to the funding of the payment of the judgment in the Amoco lawsuit; and (4) the refusal of one non-operator, PetroQuest Energy, Inc., to fund any portion of the Amoco judgment.

Meridian sought supervisory review of the trial court's July 7, 2008 partial summary judgment, but this court denied the writ application, noting that the relator has an adequate remedy on appeal following a final judgment on the merits. See Hawkins v. The Meridian Resource and Exploration LLC, 08-1383 (La. App. 1st Cir. 10/14/08).

See La. C.C.P. art. 1152.

In AAA Delivery, Inc. v. Airborne Freight Corporation, 94-346, p. 5 (La. App. 5th Cir. 11/16/94), 646 So.2d 1113, 1116, writ denied, 94-3073 (La. 2/9/95), 649 So.2d 423, the court held that the phrase "interpreted and construed" in the choice of law provision of the parties' contract established that the designated state law was to be used to settle the parties' disputes.

"A forum selection clause is a provision in a contract that mandates a particular state, county, parish, or court as the proper venue in which the parties to an action must litigate any future disputes regarding their contractual relationship." Shelter Mutual Insurance Company v. Rimkus Consulting Group, Inc. of Louisiana, 13-1977, p. 4 (La. 7/1/14), 148 So.3d 871, 873. As an objection to venue is raised pursuant to a declinatory exception, which must be pleaded prior to or in the answer or else be deemed waived, Meridian is barred from seeking to enforce the forum selection provision. See La. C.C.P. arts. 925 and 928.

On review of the trial court's designation of this judgment as final, we find no abuse of the trial court's discretion. See R.J. Messinger, Inc. v. Rosenblum, 04-1664, pp. 13-14 (La. 3/2/05), 894 So.2d 1113, 1122.

Following this court's denial of Meridian's application for supervisory writs to review the July 7, 2008 partial summary judgment, Meridian filed a motion with the trial court to designate the judgment as final pursuant to La. C.C.P. art. 1915(B), but the trial court denied the motion.

See Lowman v. Merrick, 06-0921, p. 13 (La. App. 1st Cir. 3/23/07), 960 So.2d 84, 92.